**IN THE UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF MISSISSIPPI<br>SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.** **CAUSE NO. 1:23-cr-44-HSO-BWR-1**

**GEORGE WESLEY<br>WASHINGTON, JR.**

**MEMORANDUM OPINION AND ORDER<br>DENYING DEFENDANT'S MOTION [38] TO SUPPRESS**

This matter comes before the Court on the Motion [38] to Suppress filed by Defendant George Wesley Washington, Jr. The Government filed a Memorandum [40] in opposition to the Motion, and the Court conducted a hearing on the Motion on February 8, 2024. The Court also accepted supplemental briefs from the parties. After due consideration of the argument and testimony presented by the parties, the record, and relevant legal authority, the Court finds that the Motion [38] to Suppress should be denied because the good faith exception applies.

## I. FACTUAL BACKGROUND

On March 16, 2023, agents from the Department of Homeland Security arrested Washington and seized his Apple iPhone. Jason Elder, a special agent with Homeland Security Investigations, filed a Criminal Complaint against Washington, alleging possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Compl. [1]. Agent Elder next submitted an affidavit in support of a warrant application for a search of Washington's iPhone. Aff. [41-1]. Agent Elder testified that he conducted

surveillance of a residence located at 14561 Canal Crossing Boulevard, Gulfport, Mississippi, in response to a tip concerning a package being delivered to that address by Federal Express. *Id.* at 4. After Federal Express delivered the package to that address, Agent Elder saw a man later identified as Washington take the package from the front porch. *Id.* Agent Elder followed Washington to a gas station, where he questioned him. *Id.* at 4-5. Washington told Agent Elder that he did not know the residents of the home on Canal Crossing, but his cousin, Rodney Smith, asked him to pick up the package and deliver it to an unknown female at a gas station. *Id.* at 5. He claimed he did not know what the package contained but stated that his cousin "is in the game" and has ties to "Mexicans in California." *Id.* Later, he told Agent Elder that he thought the package contained marijuana. *Id.*

After a narcotics detection canine alerted officers to the presence of narcotics in Washington's vehicle, agents searched the vehicle and removed the package from the back seat. *Id.* They conducted field testing on the package and determined that it contained approximately 2,285 grams of methamphetamine. *Id.* Washington told Agent Elder that he communicated with his cousin using the Snapchat application on his Apple iPhone, so agents seized the phone. *Id.* at 5-6. He also stated that his cousin gave him the tracking number for the package, which he used to determine when the package had been delivered. *Id.* at 5.

On March 22, 2023, a United States magistrate judge signed a search warrant [38-1], which authorized a search of the phone to seek the following records that relate to violations of 21 U.S.C. § 841(a)(1):

> a. lists of customers and related identifying information;
> b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
> c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
> d. any information recording Washington's schedule or travel from October 2020 to present; and
> e. all bank records, checks, credit card bills, account information, and other financial records.

Search Warrant, Attach. B [38-1]. The warrant also authorized a search for "[e]vidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history," as well as

> [r]ecords evidencing the use of the Internet Protocol address to communicate with including: a. records of Internet Protocol addresses used; b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

*Id.*

On April 4, 2023, a Grand Jury returned an indictment charging Washington with knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. Indictment [18].[1] Washington has filed a

[1] On April 10, 2024, a Grand Jury returned a Superseding Indictment, charging Washington with one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846, as well as one count of possession

motion asking the Court to suppress evidence gained from the search of his cell phone. Mot. [38].

The Court conducted a hearing on the motion, where counsel for Washington argued that Agent Elder's affidavit did not provide a nexus between Washington's statement concerning Snapchat and the data that was on his phone. Counsel asserted that the affidavit was deficient because Agent Elder did not testify that his training and experience led him to expect to find the evidence of drug trafficking listed in the warrant application. He further argued that, even if Homeland Security had probable cause to search the phone's Snapchat application, Agent Elder's affidavit did not provide a basis for searching the remainder of the phone. Thus, Washington argued that the warrant affidavit constituted a barebones affidavit lacking sufficient specificity to support a search of the entire phone.

Agent Elder testified at the hearing that he did not intend to limit the search to the Snapchat application but to search for any evidence on the phone related to the crime charged. He explained that he did not look at all of the information obtained from Washington's phone, but he conducted relevant searches, such as all information on the phone related to tracking packages through Federal Express. He also searched for messages contained on the phone. He did not know whether the messages he viewed were Snapchat messages or messages contained in a separate application.

---

with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. Superseding Indictment [56].

The Court took the Motion to Suppress under advisement because it was unclear what evidence from the phone, if any, the Government intended to introduce at trial. The Government later filed a Fed. R. Evid. 404(b) Notice expressing its intent to use the following evidence found on Washington's iPhone:

> SMS/text messages referring to drug trafficking[,] SMS/text message of photographs and videos related to drug trafficking[, and] information from Mr. Washington's cellular device showing other occasions where he received and searched for tracking information with respect to FedEx packages.

Notice [47] at 1.

After the Government filed its Notice, the Court granted Washington and the Government permission to file supplemental memoranda. Washington filed his Supplemental Memorandum [48] on March 28, 2024. After receiving a transcript of grand jury testimony that arguably contradicted statements made in the warrant supporting the affidavit, Washington obtained permission to file a Second Supplemental Memorandum [51] in which he requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Government filed a Supplemental Response [54] in opposition to both of Washington's Supplemental Memoranda.

## II. DISCUSSION

### A. Relevant Legal Standard

The Supreme Court has held that the Fourth Amendment does not prohibit admission of illegally seized evidence at trial. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent

effect, rather than a personal constitutional right of the party aggrieved." *Id.* "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Id.* Therefore, the issue in the present case is not whether the warrant was constitutionally invalid, but whether the evidence seized pursuant to the warrant should be suppressed. *See United States v. Allen*, 625 F.3d 830, 836 (5th Cir. 2010).

When a defendant seeks suppression of evidence obtained pursuant to a search warrant on the basis of lack of probable cause, courts first determine whether the good faith exception to the exclusionary rule applies. *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018). The good faith inquiry is confined "to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Allen*, 625 F.3d at 835. "A warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting a search." *United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 2467, 216 L. Ed. 2d 435 (2023) (hereafter referred to as "*Morton II*"). For this reason, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Id.*

The question of whether the good faith exception applies "will ordinarily depend on an examination of the affidavit by the reviewing court . . . , but all of the circumstances [surrounding issuance of the warrant] may be considered." *United*

*States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003). The Fifth Circuit has identified four situations in which the good faith exception does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*Contreras*, 905 F.3d at 858 (quoting *United States v. Woerner*, 709 F.3d 527, 533-34 (5th Cir. 2013)).

If the good faith exception applies, no further inquiry is required, and the motion to suppress should be denied. *Allen*, 625 F.3d at 835. If the good faith exception does not apply, a court must determine whether the magistrate judge had a "substantial basis for believing there was probable cause for the search." *Id.*

B. Request for a *Franks* Hearing

1. Conflicting Grand Jury Testimony

Washington has produced testimony given by Homeland Security Investigations Special Agent Laron Smith before the grand jury that arguably contradicts some of the statements made in the warrant affidavit. Agent Smith testified that agents removed the methamphetamine from the package and replaced it with another substance before it was delivered by Federal Express and before it was picked up by Washington. Tr. [53] at 6-9. The warrant affidavit does not mention prior removal of the methamphetamine, and it implies that the contents of the package tested positive for methamphetamine in a field test performed at the

time of Washington's arrest. Aff. [41-1] at 5. The Government responds that Agent Smith "was covering the grand jury hearing for Agent Elder. . . . Agent Smith incorrectly testified that the methamphetamine was removed from the package prior to delivery. . . . To be clear, Agent Elder's factual recitation in his affidavit was accurate and truthful." Resp. to Supp. Mem. [54] at 4 n.1. Washington requests a *Franks* hearing concerning whether the affidavit supporting the warrant should be voided.

"There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks*, 438 U.S. at 171. To overcome this presumption, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* An evidentiary hearing is not required unless the defendant alleges that the affidavit contains a "deliberate falsehood" or a statement made with reckless disregard for the truth. *Id.*; *see also United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020). These allegations must be accompanied by an offer of proof and a "statement of supporting reasons." *Franks*, 438 U.S. at 171.

> [I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.*

In his Second Supplemental Response, Washington does not allege that any statements in the affidavit were either deliberately false or made with reckless disregard. Rather, he asks the Court to schedule a hearing to determine this issue. 2d Supp. Mem. [51] at 5. He cites *United States v. Ortega*, 854 F.3d 818 (5th Cir. 2017), for the proposition that "a court must make findings as to whether the warrant affidavit contained false statements and whether the false statements were made intentionally and with reckless disregard for the truth." *Id.* However, the *Ortega* decision did not address the question of whether a *Franks* hearing was warranted but the separate question of whether the court erred in denying a motion to suppress after conducting a *Franks* hearing. *See Ortega*, 854 F.3d at 825 n.8, 828-29. Since Washington has failed to allege or offer proof that statements in the warrant affidavit were made deliberately or with reckless disregard, he is not entitled to a *Franks* hearing.

2. Request to Strike Paragraph 9 of the Warrant Affidavit

Citing the *Franks* decision, Washington also asks the Court to strike paragraph 9 of the warrant affidavit, which states:

> Based on my training, experience, and research [and from consulting the manufacturer's advertisements and product technical specifications available online at https://www/lg/us/cell-phones], I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

Aff. [41-1] at 9. Washington argues that, in this paragraph, "the affiant fails to differentiate between information he knows from his training and experience, and

information he obtained from the 'manufacturer's advertisements and product-technical specifications.'" Suppl. Resp. [48] at 5. He asserts that this omission is material because the website cited in paragraph 9 relates to LG phones, while Washington's phone is an Apple iPhone.

The Court finds that a *Franks* hearing is not necessary to resolve this issue. First, the statement that Special Agent Elder checked the LG website is not material. It is common knowledge that smart phones, including iPhones, are capable of performing the functions listed in paragraph 9. Furthermore, the remaining content in the affidavit is sufficient to establish probable cause.

Second, the citation to the LG website appears to be a copy-and-paste or typographical error, not a statement made intentionally or with reckless disregard for the truth. *See United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010) ("Although sloppiness may raise flags, it is not in any way fatal because search warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation."); *United States v. Beard*, No. 4:18-CR-00601, 2019 WL 2161038, at *11 (S.D. Tex. May 17, 2019), *aff'd*, 16 F.4th 1115 (5th Cir. 2021) (collecting cases and holding that typographical and cut-and-paste errors do not satisfy the mens rea requirement of *Franks*). Washington's request for a *Franks* hearing and his request to strike paragraph 9 are denied.

C. Whether the Good Faith Exception Applies

1. Indicia of Probable Cause

The good faith exception does not apply when the warrant affidavit "is a 'bare bones' affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Robinson*, 741 F.3d 588, 596-97 (5th Cir. 2014). Thus, if the affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause," the good faith exception does not apply. *Id.*

Washington argues that the affidavit submitted with the warrant application "wholly fail[ed] to draw any nexus between Defendant's suspected drug trafficking activities — or even the conduct of drug traffickers generally — and Defendant's cell phone." Mot. [38] at 3. "The requisite nexus between the location to be searched and the evidence sought can be shown by direct observation or by normal inferences as to where the articles sought would be located." *Robinson*, 741 F.3d at 587. The judge who issues the warrant is permitted to "draw reasonable inferences from the material he receives." *Id.*

Washington has not submitted any authority or basis supporting his assertion that the affidavit should have explained "what Snap Chat is, how Snap Chat works, whether Snap Chat retains data from past communications, and if so, how, where, and for how long the data is retained." Suppl. Mem. [48] at 4. It was also unnecessary for the affidavit to explicitly state that Washington's cousin sent him a message *on his phone* asking him to pick up the package or that Washington

*used his phone* to track the package because these facts can be inferred from the context of the affidavit.

In his Supplemental Memorandum [48], Washington also argues that, based on his attorney's experience, the affidavit should have contained:

> i. A statement that based on affiant's training and experience, someone who commits the type of offense being investigated often uses cell phones to communicate in various ways about their plans via text messaging, phone calls, or through other communications applications; or
> ii. A statement that based on affiant's training and experience, someone who commits the type of offense being investigated often utilizes a cellular telephone to communicate with other individuals with knowledge of the crime.

Suppl. Mem. [48] at 6. He further notes the lack of any assertion that he was under investigation for narcotics trafficking, had engaged in previous transactions, or been named by a confidential informant. These arguments are not well taken because the affidavit explained that: (1) Washington was found to be in possession of a large quantity of narcotics; (2) Washington admitted that he thought the package contained narcotics; (3) Washington made statements indicating that his cousin, who asked him to pick up the package, was involved in narcotics trafficking; (4) Washington did not know the residents of the house where the package was delivered or the person his cousin asked him to deliver the package to; and (5) Washington offered to find out who sent the package if the agents let him go.

All of this information, combined with Washington's statements that he communicated with his cousin using the Snapchat application on his phone and that his cousin supplied him with tracking information for the package, provided

sufficient indicia of probable cause to justify a finding of good faith for searching Washington's phone for evidence of drug trafficking. Additional information or specificity was not necessary.

2. Necessity of Independent Probable Cause

Washington argues that statements made by the United States Supreme Court concerning cell phones in *Riley v. California*, 573 U.S. 373 (2014), justify a finding that the agents did not have a good faith basis for searching Washington's entire phone based on the details provided in the warrant affidavit. In *Riley*, the Supreme Court explained:

> Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Id.* at 396-97. Based on this reasoning, the Supreme Court held that officers must obtain a warrant prior to conducting a search incident to arrest of a cell phone. *Id.* at 403. This argument is similar to that made by the defendant on rehearing en banc in *Morton II* — that good faith should be analyzed separately for each part of a cell phone. *See Morton II*, 46 F.4th at 339.

In *United States v. Morton*, 984 F.3d 421, 425 (5th Cir. 2021) (hereafter referred to as "*Morton I*"), a Fifth Circuit panel held, and the Government agreed, that "separate probable cause is required to search each of the categories of information found on the cellphone[ ]." 984 F.3d at 425. The Fifth Circuit panel observed, "Although '[t]reating a cell phone as a container . . . is a bit strained,' the

Supreme Court has explained that cellphones do 'collect[ ] in one place many distinct types of information.'" *Id.* at 425-26 (quoting *Riley,* 573 U.S. at 394). The Fifth Circuit panel in *Morton I* determined that officers had probable cause to search the contacts, call logs, and messages on the defendant's phone but not the photographs saved on the phone. *Id.* at 427-28, 431.

On rehearing en banc, the Fifth Circuit noted that Morton had forfeited his argument that a separate probable cause inquiry was needed for each portion of his phone because he did not assert this argument before the district court or in his original appellate brief. *Morton II*, 46 F.4th at 339. Nevertheless, the en banc court noted, "Even if we could consider Morton's new argument advocating a piecemeal analysis, . . . [o]ur precedent takes a different approach. . . . We instead focus[ ] on whether the affidavit as a whole was bare bones." *Id.* at 339. The *Morton II* court determined that the affidavits in support of the search warrants for the defendant's cell phones were not bare bones affidavits, so the good faith exception to the discovery rule applied. *Id.* at 339-40.

In the *Morton II* decision, the Fifth Circuit has indicated that it would not require a separate nexus between the crime alleged and each type of data searched on Washington's phone. Special Agent Elder's affidavit, when considered as a whole, is not a bare bones affidavit. He described the events leading up to Washington's arrest in detail and provided a connection between Washington's phone and the crime Washington allegedly committed. Washington's argument based on *Riley v. California* is not well-taken.

3. Sufficiency of the Warrant

Washington claims that paragraphs 2 and 3 of Attachment B to the Warrant constitute a "prohibited general warrant" because paragraph 3 "do[es] not constrict search of the items listed" to only those items that relate to violations of 21 U.S.C. § 841(a)(1), and paragraph 2 includes paragraph 3 by reference. Mot. [38] at 5. The Government once again counters that the good faith exception to the exclusionary rule applies.

An officer's reliance on a warrant is not objectively reasonable and, therefore, he is not entitled to invoke the good faith exception, if the warrant authorizing the officer's actions is so "facially deficient" in failing to particularize the place to be searched or the things to be seized that the executing officers "cannot reasonably presume it to be valid." *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) (internal quotation marks and citation omitted). For this reason, "open-ended" or "general" warrants are constitutionally prohibited. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1005 (5th Cir. 2003).

> The problem posed by the general warrant is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. The Fourth Amendment addresses the problem by requiring a particular description of the things to be seized. This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Andresen v. Maryland*, 427 U.S. 463, 480 (1976). The applicable test for particularity asks whether "the description in the warrant would permit an

executing officer to reasonably know what items are to be seized." *United States v. Shugart*, 117 F.3d 838, 845 (5th Cir. 1997).

The Court finds that the warrant, when viewed as a whole, contains sufficient information to permit an officer to reasonably know what items are to be seized. Furthermore, as the Fifth Circuit has explained:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Allen*, 625 F.3d at 837. Since Washington has not produced evidence of police conduct meeting this standard, the good faith exception applies, and his request for suppression must be denied.

## III. CONCLUSION

For the foregoing reasons, the Court finds that the good faith exception to the exclusionary rule applies. The evidence seized from Washington's cell phone should not be suppressed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant George Wesley Washington, Jr.'s Motion [38] to Suppress is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 11th day of April, 2024.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE